PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WALLACE MCDONALD ASCENCIO, | ) | CASE NO. 4:11CV494 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| JILLIAN SHANE, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |

*Pro se* Plaintiff Wallace McDonald Ascencio filed this *Bivens*[1] action against Northeast Ohio Correctional Center ("NEOCC") Grievance Officer Jillian Shane, NEOCC Mail Officer William H. Fain, and NEOCC Special Investigative Services ("SIS") Officer Conroy. ECF No. 1 at 1. In the Complaint, Plaintiff alleges his mail was screened and two items sent to him were confiscated. ECF No. 1 at 5. He seeks monetary and injunctive relief. ECF No. 1 at 6.

## I. Background

Plaintiff alleges his incoming mail at the prison was screened. ECF No. 1 at 3, 5. Plaintiff explains that he was called to the mail room on December 7, 2010 because he received a package that contained another inmate's legal materials.[2] ECF No. 1 at 3. He was told prison regulations prohibited him from receiving mail for another inmate and a form document was prepared to authorize the material to be sent outside the institution or destroyed. ECF No. 1.

---

[1] *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

[2] Even though Plaintiff's Complaint states December 17, 2010, the incident report states December 7, 2010. ECF No. 1-1 at 3.

(4:11CV494)

Plaintiff describes himself as a "jailhouse lawyer" who helps other prisoners file sentence reductions with the courts. ECF No. 1 at 4. He claims Bureau of Prisons regulations allow inmates to obtain legal assistance from other inmates and indicates he should be permitted to receive mail on their behalf. ECF No. 1 at 4.

Officer Fain claimed that Plaintiff was insolent toward him when asked to sign the form. ECF No. 1-1 at 2. He indicated that Plaintiff used profanity, punched the door, tore up the form and flushed the pieces down the toilet. ECF No. 1-1 at 3. He was charged with a conduct violation for which he was sanctioned with a ninety (90) day loss of commissary privileges. ECF No. 1-1 at 3. He denies using profanity, but states that even if he did, he was only exercising his right to freedom of speech. ECF. No. 1 at 3.

Several days later, Plaintiff was again notified that he received a package that could not be delivered to him. This package was sent by his Aunt, and contained cash and a photocopy of a religious motivational message written in Spanish. ECF Nos. 1 at 5; 1-1 at 5. He was told that prison regulations prohibit receipt of materials written in a foreign language when the inmate understands English. ECF No. 1 at 5. He claims the religious writing was confiscated; however, he attaches a photocopy of it to his Complaint. ECF No. 1-1 at 5.

Finally, Plaintiff claims his out-going mail is being screened. He states he was told the mail room supervisor takes it to S.I.S. Officer Conroy for review. ECF No. 1 at 5. He contends mail addressed to lawyers and to the Department of Justice are also reviewed and sometimes destroyed. He claims the Defendants are abusing the prison's mail room procedures. ECF No. 1 at 3, 5. He claims he sought assistance from Grievance Officer Shane, but did not receive the

(4:11CV494)

relief he was seeking. ECF No. 1 at 3.

Plaintiff asserts the following three claims for relief: (1) the Defendants are tampering with his mail in violation of the First Amendment; (2) the Defendants denied him Freedom of Religion when they confiscated the religious writing sent by his Aunt; and, (3) the Defendants retaliated against him. ECF No. 1.

## II. Standard for Dismissal

Although *pro se* pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[3] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal , 129 S.Ct. 1937, 1949

---

[3] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

3

(4:11CV494)

(2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*. In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc*., 151 F.3d 559, 561 (6th Cir.1998).

### III. Discussion

#### A. Parties

As an initial matter, Plaintiff fails to state a claim against Grievance Officer, Jillian Shane. Plaintiff cannot establish the liability of any defendant without a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). Plaintiff alleges that he asked Shane to investigate the difficulties he was having with his mail and she did not help him. ECF No. 1 at 4. Based upon these statements, it appears that Plaintiff is attempting to hold Shane liable because she did not respond favorably to his grievances. Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999). There are no other allegations in the Complaint that suggest Shane was personally involved in the decision to open, review and

4

(4:11CV494)

censor his mail.

### B. Interference with Incoming Mail

Read liberally, Plaintiff's First Amendment claims encompass both a general objection to the opening and censoring of his incoming mail as a violation of his (1) right to freedom of association, (2) specific challenges to confiscation of legal materials in violation of his right to access to the courts, and (3) confiscation of his religious tract in violation of his right to freedom of religion. ECF No. 1. A review of Plaintiff's Complaint indicates that it fails to state a claim that would entitle him to relief.

### 1. General Objection to Opening and Censoring Mail

Plaintiff's blanket assertion of an absolute right against inspection of all incoming correspondence is without merit. Although inmates do retain the right under the First Amendment to receive mail, it is more limited in scope than the constitutional rights held by individuals in society at large. *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001). Some rights, particularly those found in the First Amendment, are simply at times inconsistent with the status of a prisoner. *Id.* at 229; *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). *Procunier v. Martinez*, 416 U.S. 396, 404-405 (1974); *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). When a prison regulation impinges on a prisoner's constitutional rights, it will be upheld as valid as long as it is reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89; *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir.1992). When making that determination, federal courts must give considerable deference to prison officials. *Turner*, 482 U.S. at 89.

When considering regulations that govern inmate mail, a distinction is drawn between

5

(4:11CV494)

legal mail and non-legal mail. Legal mail is given much greater protection from unreasonable intrusion. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974); *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir.1996). Courts have heightened concerns with allowing prison officials unfettered discretion to open and read an inmate's "legal mail" because this correspondence impacts upon the attorney-client privilege, or the prisoner's right of access to the courts. *See Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir.1996). Legal mail, therefore, may be opened and inspected for contraband by prison officials only in the prisoner's presence. *Id*.

Conversely, prison officials may open, inspect for contraband and read a prisoner's incoming non-legal mail provided that the inspection is conducted pursuant to a policy to maintain prison security. *See Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir.2003); *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir.1993). Opening and inspecting of an inmate's non-legal correspondence aids prison authorities in preventing escape plans, inflammatory materials, or other contraband from getting to prisoners. *See Turner*, 482 U.S. at 92; *Young v. Weathersby*, No. 1:09-cv-67, 2010 WL 3909463, at * 8 (W.D.Mich. Sept. 15, 2010).[4] All of those goals

---

[4] *See also Nasir v. Morgan*, 350 F.3d 366 (3d Cir.2003) (upholding ban prohibiting correspondence with former inmates prisoners can develop code or jargon to prevent detection of their real messages and there would be "an inherent risk of missing dangerous communications both through use of deceptive language and due to the volume of incoming mail that prison staff would be required to read"); *Smith v. Parker*, No. 97-5317, 2001 WL 302054 at *2 (6th Cir. March 22, 2001) (upholding rejection of incoming mail under a policy prohibiting inmates at one prison from providing legal assistance to prisoners at another prison); *Jackson v. Pollard*, No. 07-C-28, 2007 WL 1556867, at * 3 (W.D.Wis. May 25, 2007) (coded prisoner communications "could be used to further drug trafficking, convey escape plans, relay gang messages, plan disturbances, order attacks on staff and other inmates and engage in other criminal conspiracies"); *Hall v. Johnson*, 224 F.Supp.2d 1058, 1060 (E.D.Va.2002) (upholding policy where all general purpose correspondence over one ounce in weight was rejected because it allowed mail room personnel to quickly scan a shorter document for potential security risks, such as escape plans); *Spitsyn v. Morgan*, No.

6

(4:11CV494)

directly impact the safety and security of the prison staff and inmates.

Not all mail that a prisoner receives from a legal source, however, is considered to be "legal mail." *Sallier*, 343 F.3d at 874. While mail from a court or the inmate's attorney clearly constitutes "legal mail," mail from other sources, such as a county clerk, do not qualify as constitutionally protected legal mail, absent a specific indication that the contents are "to be opened only in the presence of the prisoner." *Id*. at 875-878. Only mail that is considered to be "legal mail" will received the heightened protection.

Although appropriately designated legal mail is given greater protection against unwarranted intrusion, both legal and non-legal mail may be opened and inspected by prison authorities. There is no general right to unfettered mail delivery. Plaintiff's general allegation that the prison officials opened and inspected his mail, without more, fails to state a claim upon which relief may be granted.

### 2. Inmate Medina's Legal Documents

Plaintiff also challenges the mail room officer's refusal to deliver a package containing another inmate's legal documents as a violation of his First Amendment right to access to the courts. Plaintiff states he was acting as a jailhouse lawyer to assist Inmate Medina. ECF No. 1 at 5. The package, sent by Mary Medina of Aurora. Colorado, was addressed to Plaintiff and contained legal documents pertaining to Inmate Medina. ECF No. 1 at 5. Officer Fain refused

---

C04-5134, 2008 WL 714095, at * 5 (W.D.Wash. Mar. 14, 2008) (upholding policy rejecting incoming mail written in a foreign language because such correspondence was a threat to institutional safety and security).

(4:11CV494)

to deliver the documents to Plaintiff because prison policy prohibits inmates from possessing legal material belonging to another inmate in the institution. ECF No. 1 at 5. He claims Officer Fain should not have opened his legal mail and he contends he needs to be able to receive these types of documents to assist other inmates. ECF No. 1 at 4-5. The court liberally construes this claim as a denial of access to the courts.

Although prisoners are entitled to receive assistance from jailhouse lawyers where no reasonable alternatives are present to provide them with access to the courts, there is no corresponding right for an inmate to be a jailhouse lawyer or to act in a representative capacity. *Johnson v. Avery*, 393 U.S. 483, 490 (1969); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir.1993). In short, Plaintiff has no independent right to act like a lawyer, or to assume the role of advocate. *Gibbs*, 10 F.3d at 378. He was merely assisting Inmate Medina to exercise his First Amendment right. To the extent that Officer Fain's actions prevented Inmate Medina from pursuing a non-frivolous claim because he could not obtain the legal assistance he needed, Inmate Medina, not Plaintiff, may have a claim for denial of access to the courts. *Id*. Plaintiff cannot assert a violation of his constitutional rights because he was hindered in his effort to assist another inmate.

### 3. Religious Writing

Plaintiff also claims Officer Fain violated his right to free exercise of his religion by confiscating as contraband a Spanish language religious writing. The writing appears to be a photocopy of a computer printout of a religious motivational message. ECF No. 1-1. The paper was confiscated because prison policy prohibits inmates who speak English from receiving

8

(4:11CV494)

correspondence written in foreign languages. ECF No. 1 at 5.

The First Amendment to the United States Constitution states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. Inmates retain the First Amendment right to exercise their religion subject to reasonable restrictions and limitations. *See* Bell v. Wolfish, 441 U.S. 520, 549-51 (1979). The Court must first determine whether Defendants' policies deprived Plaintiff of the right to express his religion. More specifically, the Court must evaluate the quality of the claims alleged to be religious. *See* Wisconsin v. Yoder, 406 U.S. 205, 215 (1972). To be protected by the Constitution, the particular religious ritual must be central or indispensable to the inmate's religious observances and must be a conviction shared by an organized group as opposed to a personal preference. Sequoyah v. T.V.A., 620 F.2d 1159, 1164 (6th Cir.1980). If the tenet is not fundamental, dismissal is appropriate. *See* Abdur-Rahman v. Michigan Dept. of Corrections, 65 F.3d 489, 492 (6th Cir.1995).

In this case, Plaintiff does not allege that the writing is a central tenet of his religion. Although it is intended to remind its readers of their religious beliefs in difficult times, there is no suggestion that possessing or reading this sheet is a fundamental practice of Plaintiff's religion.

Furthermore, even if the belief were an indispensable tenet of Plaintiff's religion, the inquiry does not end there. The Court also must determine whether a substantial burden has been placed on that belief. The Sixth Circuit has stated that a "substantial burden" places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living*

(4:11CV494)

*Water Church of God v. Charter Twp. Meridian*, Nos. 05-2309 and 06-1210, 258 Fed. Appx. at *734 (6th Cir. Dec.10, 2007). The document was confiscated because it was written in Spanish. The same document translated into English would presumably be permissible. Plaintiff speaks English and would not have to violate his religious beliefs to obtain the document in English.

### C. Interference with Out-Going Mail

Plaintiff also states, without explanation, that the Defendants also read and destroy "mail that is going to lawyers or to the [D]epartment of [J]ustice . . . ." ECF No. 1 at 4. The Court liberally construes this as a claim for denial of access to the courts.

To state a claim for denial of access to the courts, Plaintiff must demonstrate that he suffered actual injury as a result these actions. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). This injury requirement is not satisfied by just any type of frustrated legal claim. *Id*. A prison official may be held liable for the deprivation of this First Amendment right only to the extent that his or her actions prevented a prisoner from pursuing or caused the rejection of specific non-frivolous direct appeals, habeas corpus applications, or civil rights actions. *Id*.; *Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999). "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration."[5] *Id.* at 355.

Plaintiff provides facts insufficient to support this claim. There is no indication of the

---

[5] The Supreme Court stressed that the First Amendment does not guarantee prisoners the ability to transform themselves into "litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis*, 518 U.S. at 355.

(4:11CV494)

number of letters or packages he believes to have been confiscated, the contents of these letters, or the purpose for which they were sent. He does not state whether the letters pertained to a specific legal action, or whether they were general solicitations for information or assistance. He does not indicate whether the correspondence in question pertained to the Plaintiff, or to an inmate Plaintiff was assisting as a jailhouse lawyer.

To satisfy Rule 8, a Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. A claim has facial plausibility when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Id*. Where a Complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*

Plaintiff has not pleaded sufficient facts to state a plausible claim for denial of access to the courts.

### D. Retaliation

Finally, Plaintiff contends the Defendants retaliated against him. To state a *prima facie* case for retaliation, Plaintiff must establish that he engaged in protected conduct; an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and that a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

11

(4:11CV494)

Plaintiff alleges very few facts to explain this claim. He indicates that he assisted inmates with filing appeals of their sentences. ECF No. 1 at 4. He states he had a verbal altercation with a mail room clerk concerning inspection of his mail. ECF No. 1 at 3. He mentions he filed a lawsuit concerning his health. ECF No. 1 at 4. He then concludes that the Defendants retaliated against him. ECF No. 1 at 5. While each of these activities may under some circumstances may be considered protected activities, he does not specify a particular adverse action taken against him, and provides no facts to reasonably connect that adverse action to the protected conduct in which he engaged. The claim is stated as a legal conclusion. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action does not meet the pleading standard of Fed. R. Civ. P. 8. *Iqbal*, 129 S.Ct. at 1949.

### IV. Conclusion

Accordingly, the Court dismisses the cause of action pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[6]

IT IS SO ORDERED.

| August 31, 2011 | */s/ Benita Y. Pearson* |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |

---

[6] 28 U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."

(4:11CV494)

13